UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

CHRISTOPHER RANSOM,

                                                             **COMPLAINT**
                           Plaintiff,              15-cv-6149

                                                     JURY TRIAL DEMANDED

            -against-

THE CITY OF NEW YORK, a municipal corporation;
POLICE OFFICER ABBAS KYMIN (Shield No. 11037);
POLICE OFFICER JIAN YU (Shield No. 11250);
POLICE OFFICERS JOHN DOE #1-10, in
their individual and official capacities,

                                          Defendants.
-----------------------------------------------------------------------X

       Plaintiff, Christopher Ransom, by his attorney, Ken Womble, alleges for his complaint against the defendants as follows:

## PRELIMINARY STATEMENT

       1.    Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights guaranteed by the Constitutions of the Unites States and the State of New York.

## JURISDICTION

       2.    This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

       3.    Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

## VENUE

       4.    Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b)(2), in that this is the District in which the events or omissions underlying the claim

arose.

## JURY DEMAND

5.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.     The plaintiff is an African-American male and was at all relevant times a citizen of the City and State of New York.

7.     Defendant, the City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.     Defendant, the City of New York, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

9.     At all times hereinafter mentioned, the individually named defendants, Police Officer Abbas Kymin (Shield No. 11037), Police Officer Jian Yu (Shield No. Police Officers John Doe #1-10, were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

10.    At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11.    Each and all of the acts of the defendants alleged herein were done by said

defendants while acting within the scope of their employment by defendant City of New York.

12. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

## FACTS

13. On June 11, 2015, at approximately 1:15 a.m., Plaintiff Ransom standing at the corner of Fulton Street and Kingston Avenue, Brooklyn. Plaintiff Ransom was merely standing and was engaged in no illegal activity.

14. Defendant Police Officer Jian Yu (Shield No. 11250) approached Plaintiff Ransom and illegally ordered him to remove his hands from his pockets.

15. Plaintiff Ransom was engaged in no illegal activity at the time Defendant Officer Yu illegally ordered him to take his hands out of his pockets. Plaintiff was merely standing on a sidewalk with his hands in his pockets, not bothering anyone.

16. When Plaintiff Ransom lawfully refused Defendant Officer Yu's illegal request and attempted to walk away, he was grabbed by Defendant Officer Abbas Kymin (Shield No. 11037) from behind.

17. Plaintiff Ransom, not knowing who was grabbing him, backed away into the food store in front of which he was standing. Plaintiff Ransom remained in the food store while Defendant Officers Yu and Kymin stood blocking the doorway. Defendant Officers Yu and Kymin called for backup.

18. Shortly thereafter, numerous other Defendant Officers arrived at the location and, along with Defendant Officers Yu and Kamin, stormed the food store with guns drawn.

19. Upon seeing the numerous guns pointed at him by the approaching Defendant Officers, Plaintiff Ransom placed his hands on his head and knelt to the ground, even though he

had engaged in no illegal activity.

20. Defendant Officers then shoved Plaintiff Ransom face-first into the floor and handcuffed him while one Defendant Officer placed his knee into Plaintiff Ransom's back, causing him extreme pain.

21. Defendant Officers then conducted an incredibly rough and demeaning search of Plaintiff Ransom, with one Defendant Officer placing his hand between Plaintiff Ransom's buttocks and grabbing Plaintiff Ransom's penis and testicles.

22. Defendant Officers Yu and Kymin then place Plaintiff Ransom into their squad car and drove him to the 79th Precinct.

23. At the 79th Precinct, Plaintiff Ransom requested medical attention for the injuries he had sustained as a result of being forcibly tackled and shoved into the floor by Defendant Officers. His request was declined.

24. At the 79th Precinct, Plaintiff Ransom asked why he had been arrested. He was informed by Defendant Officers Yu and Kymin that the other Defendant Officers were still at the location of his arrest looking for a weapon.

25. Eventually, a Defendant Officer informed Plaintiff Ransom that no weapon had been found. This was probably due to the fact that Plaintiff Ransom possessed no weapon and was merely a person standing on a sidewalk with his hands in his pockets.

26. Although Plaintiff was injured and had repeatedly requested medical attention, he was instead taken to central booking.

27. Upon arrival at central booking, Plaintiff Ransom requested medical attention for his injuries. Instead of appropriately taking Plaintiff Ransom to a medical hospital, Defendant Officers instead transported Plaintiff Ransom to the Psychiatric Ward of NYU Langone Medical

4

Center.

28. Plaintiff Ransom was inexplicably detained at the Psychiatric Ward of NYU Langone Medical Center for approximately 8 hours. He met with two separate psychiatrists, although he had done nothing whatsoever to warrant such an examination.

29. Although Plaintiff Ransom continued his repeated requests for medical attention for his injuries, and although NYU Langone Medical Center has an emergency care department, Defendant Officers decided to transport him to NYU Lutheran Medical Center instead of allowing him to receive treatment at NYU Langone.

30. Plaintiff Ransom was transported via ambulance from NYU Langone to NYU Lutheran. Plaintiff Ransom was admitted and was detained for an additional period of time at NYU Lutheran, where he did receive treatment for his injuries.

31. After he was treated, Plaintiff Ransom was transported back to the 79th Precinct. Plaintiff Ransom spent the night in a holding cell at the precinct.

32. The following morning, Defendant Officers transported Plaintiff Ransom back to central booking.

33. During the entirety of Plaintiff Ransom's detention, he was detained in handcuffs and ankle shackles.

34. At some point in the afternoon, over a day and a half since his illegal arrest, Plaintiff Ransom was finally arraigned on the following charges: obstructing governmental administration in the second degree, disorderly conduct, and resisting arrest.

35. Plaintiff Ransom was released by the Judge on June 12, 2015.

36. On July 27, 2015, Plaintiff Ransom's public defender submitted a motion asking the Court to dismiss the accusatory instrument as facially insufficient, citing that the accusatory

5

instrument that had charged Plaintiff Ransom was totally devoid of any allegations that would have given the Defendant Officers probable cause to detain and arrest Plaintiff Ransom.

37. On October 16, 2015, all charges were dismissed against Plaintiff Ransom.

38. During all of the events described herein, Defendant Officers acted maliciously and with intent to injure Plaintiff Ransom.

39. During all of the events described herein, Defendant Officers were involved in the decision to arrest Plaintiff Ransom without probable cause.

40. During all of the events described herein, Defendant Officers failed to intervene in the actions of their fellow officers when they observed them arresting Plaintiff Ransom without probable cause.

41. As a direct and proximate result of the acts of Defendant Officers, Plaintiff Ransom suffered the following injuries and damages: violation of his rights pursuant to the Fourth and Fourteenth Amendment of the United States, physical injury, emotional trauma and suffering, fear, embarrassment, humiliation, emotional distress, anxiety, and loss of liberty.

## **FIRST CAUSE OF ACTION**
*42 U.S.C. § 1983 - Fourth and Fourteenth Amendment Violations for Unlawful Stop*
(Against the Individual Defendant Police Officers)

42. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "41" with the same force and effect as if fully set forth herein.

43. Defendants violated the Fourth and Fourteenth Amendment because they stopped plaintiff without reasonable suspicion. This is supported by the fact that Defendant Officers fully admit that the only reason that they arrested Plaintiff Ransom was because he refused to take his hands out of his pockets.

44. As a result, Plaintiff Ransom sustained the damages alleged herein.

## SECOND CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth and Fourteenth Amendment Violations for False Arrest*
(Against the Individual Defendant Police Officers)

45. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "44" with the same force and effect as if fully set forth herein.

46. As a result of Defendant Officers' aforementioned conduct, Plaintiff Ransom was subjected to an illegal, improper, and false arrest by the defendants. Plaintiff Nelson was taken into custody and caused to be falsely imprisoned, detained, confined, and incarcerated by the Defendant Officers. In the above-mentioned actions, Defendant Officers acted intentionally, willfully, with malice, and without probable cause, privilege or consent.

47. At all relevant times, Defendant Officers acted violently and forcibly in apprehending, arresting and imprisoning Plaintiff Ransom.

48. At all relevant times, Plaintiff Ransom was unlawfully and unjustifiably held under arrest, deprived of his liberty, imprisoned and falsely charged.

49. At all relevant times, Plaintiff Ransom was aware of his confinement.

50. As a result of the foregoing, Plaintiff Nelson's liberty was restricted for an extended period of time, Plaintiff was put in fear for his safety, was humiliated, inappropriately searched, and subjected to handcuffing and shackling and other physical restraints without probable cause or reasonable suspicion.

51. As a direct and proximate result of this unlawful conduct, Plaintiff Ransom sustained the damages herein alleged.

## THIRD CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth Amendment Violation for Excessive Force*
(Against the Individual Officer Defendants)

52. Plaintiff repeats, reiterates, and realleges each and every allegation contained in

7

paragraphs numbered "1" through "51" with the same force and effect as if fully set forth herein.

53. While in the course of their duties and while acting under color of law, Defendant Officers affected a seizure and arrest of Plaintiff Ransom by intentionally using excessive physical force against plaintiff, including but not limited to slamming Plaintiff Ransom to the ground and putting their knees into his back.

54. The physical force the Defendant police officers used on Plaintiff Ransom was objectively unreasonable and wholly unnecessary.

55. The Defendant police officers use of excessive physical force caused injuries, including but not limited to, severe pain to Plaintiff Ransom's back and extremities.

56. As a direct and proximate result of this unlawful conduct, Plaintiff Ransom sustained the damages herein alleged.

## FOURTH CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth Amendment Violation for Unreasonable Search*
(Against the Individual Defendant Police Officers)

57. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "56" with the same force and effect as if fully set forth herein.

58. While in the course of their duties and while acting under color of law, defendants affected an illegal seizure and search of plaintiff by intentionally placing their hands inside of Plaintiff Ransom's and onto his buttocks and genitalia. Defendant Officers did not have probable cause or reasonable suspicion to believe that Plaintiff Ransom had, at any point, been engaged in any illegal activity. Defendant Officers also did not have evidence, reasonable suspicion or particularized belief to support the assumption that such an invasive search of Plaintiff Ransom's body would result in the recovery of any evidence or contraband whatsoever.

8

59. Defendant Officers intentional and illegal search of Plaintiff Ransom caused injuries to Plaintiff Ransom, including but not limited to, humiliation and embarrassment, emotional distress, fear, violation of his body, and violation of his civil rights and liberties.

60. As a direct and proximate result of this unlawful conduct, Plaintiff Ransom sustained the damages herein alleged.

### FIFTH CAUSE OF ACTION
*42 U.S.C. § 1983- Fifth Amendment Violations of Due Process*
(Against Individual Defendant Police Officers)

61. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs number "1" through "60" with the same force and effect as if fully set forth herein.

62. While in the course of their duties and while acting under color of law, Defendant Officers violated Plaintiff Ransom's guaranteed right of due process under the Fifth Amendment of the United States Constitution when they falsely arrested, detained and searched Plaintiff Ransom as described herein.

63. During all times relevant to this action, the New York City Police Department developed and maintained customs and practices exhibiting deliberate indifference to the constitutional rights of people in the City of New York. These customs and practices caused the violation of Plaintiff Nelson's due process rights.

64. As a direct and proximate result of this unlawful conduct, Plaintiff Ransom sustained the damages herein alleged.

### SIXTH CAUSE OF ACTION
*42 U.S.C. § 1983- Fourth Amendment Violations for Failure to Intervene*
(Against the Individual Defendant Police Officers)

65. Plaintiff repeats, reiterates, and realleges each and every allegation contained in

paragraphs numbered "1" through "64" with the same force and effect as if fully set forth herein.

66. Defendant police officers who did not participate in Plaintiff Ransom's arrest, but observed the unlawful actions alleged herein, had an opportunity to prevent such conduct, and failed to intervene.

67. As a result, Plaintiff Ransom sustained the damages alleged herein.

68. As a direct and proximate result of this unlawful conduct, Plaintiff Ransom sustained the damages herein alleged.

### SEVENTH CAUSE OF ACTION
*Municipal Liability*
(Against Defendant City)

69. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "68" with the same force and effect as if fully set forth herein.

70. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

71. However, the City of New York has isolated NYPD officers from accountability

for civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits.

72. The 79th Precinct of the New York City Police Department has one of the higher rates of Civilian Complaint Review Board complaints in the city. According to the City Comptroller's Office fiscal year report for 2014, over between 100 and 150 Civilian Complaint Review Board complaints were made against the 79th Precinct.[1] In addition to prior complaints and lawsuits, the City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of police officers from the 79th precinct unlawfully search and seize citizens, commit assaults, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.

73. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the same division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and false arrest suffered by plaintiff.

74. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual

---

[1] http://www.nyc.gov/html/ccrb/downloads/pdf/2014-annual-report-rev2layout.pdf, see page 20.

11

officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

75. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

76. In Floyd v. City of New York, 08-cv-01034-SAS-HBP, Judge Scheindlin found that the City acted with "deliberate indifference toward the NYPD's practice of making unconstitutional stops and conducting unconstitutional frisks" and adopted "a policy of indirect racial profiling by targeting racially defined groups for stops based on local crime suspect data." (Opinion and Order, dated August 12, 2013, P.13).

12

77. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

78. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a. Compensatory damages in an amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. Costs, interest and attorney's fees, pursuant to 42 U.S.C. §1988; and

d. Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated: New York, New York
     October 27, 2015         By:   Ken Womble

                                    /s/ AKWR

                                    _____

                                    Ken Womble
                                    Attorney for Plaintiff
                                    Moore Zeman Womble, LLP
                                    66 Willoughby St.
                                    Brooklyn, New York 11201
                                    (T) (718) 514-9100
                                    (F) (917) 210-3700
                                    womble@brooklynattorney.nyc